421-0496 WC Geraldine Jackson Appellant by Bruce Wiseau versus Illinois Workers' Compensation Comm'n Monterey Coal Company Appellee by Robert Muller Yes and if you would also for the record read the second case number as well please. 421-0497 WC Geraldine Jackson Appellant by Bruce Wiseau versus Illinois Workers' Compensation Comm'n Monterey Coal Company Appellee by Robert Muller Okay. Counsel, Mr. Wiseau, Mr. Muller, the court has consolidated for oral argument these two cases without enlargement of time and is that understood by counsel? Yes. Yes, sir. Okay, very good. So at this time, Mr. Wiseau, you may proceed. Thank you. May it please the court, Mr. Muller, my name is Bruce Wiseau and I represent Geraldine Jackson as executor of the estate of James Jackson. This argument refers to the living minor claim of James Jackson. In a nutshell, here's what happened. The arbitrator couldn't figure out whether she would allow Dr. E. Stambouli's evidence into this case. Eventually, she ruled that the evidence could not come in. Then she denied this claim for failure to prove disease. Commission heard a motion by claimant to allow the evidence and it issued a ruling in claimant's favor that the evidence should come in. Then after it heard the arguments, it affirmed and adopted the arbitrator decision without modification. The error is that the which is in fact in law, the decision of the arbitrator is an irreconcilable conflict with the earlier decision made by the commission to allow the evidence in. It's claimant's position that there's no question that the arbitrator excluded Dr. E. Stambouli's evidence. There's no question the commission reversed that decision of the arbitrator and ruled that the evidence should come in. And there's no question the commission affirmed and adopted an arbitrary decision that excluded the very evidence the commission had just ruled should be allowed in. So the question before the court is whether the decision of the commission can be in diametrical conflict with a prior decision of the commission. In the same case, Stan, this is not a question. Well, Mr. Ressort, if I could ask a question. I think this is sort of a strange, unusual procedure, Pastor. They ruled in your favor with regard to Dr. Stambouli's report, but then they went on and they affirmed the arbiter, adopted the arbitrator's decision. But isn't there a presumption exists that the commission considered all the evidence in reaching its decision? Mr. Mahler cited Swift and Setsukorn, which would have that. But as I look at this, it's not a question of presumptions of what the commission considered. It's not a question of speculation regarding what the commission did because decisions were issued. They were unambiguous and they're in direct conflict. In other words, the commission, as you said, heard the motion on whether that evidence should come in and they made a ruling. Once that ruling was issued, it became essentially the law of the case. When they went back and adopted and affirmed the decision of the arbitrator, which clearly left it out, that was an irreconcilable error. And it's our position that the commission should hear it again, decide what it's going to do and issue a decision that's in keeping with its first decision. Well, I think your argument, Mr. Messore, has some intuitive appeal. But let me ask you sort of a pointed question. Is this type of an issue? Would this be amenable to what we called, you know, a plain error review, that even if we considered the testimony, the result would have still been the same? Well, I thought about that. And Mr. Mahler argued that eloquently. But I don't think so. Because let me give you a chronology of what happened here. And it's going to take a minute, but it's what we had to do, what Mr. Mahler and I had to do. The two cases went to arbitration or were consolidated for trial. At arbitration, there was a dispute as to whether the report and deposition of East End Bully could be used in both cases or whether it was limited to just the widow's case. After the arbitration concluded and with no record being made, the arbitrator heard each party's arguments. She said that she'd consider the arguments and that she could allow the evidence in, but she didn't know if she would. The arbitration and the arguments over the evidence were at Arbitrator Lindsay's Springfield call. Next, the parties were notified that a hearing on the matter would take place at at the side of the hearing instead of a regular call at Springfield. I don't know. I do know that hearing the arguments in Quincy instead of Springfield required petitioner's counsel to drive a round trip of 350 miles for close to seven hours, stay overnight in the Quincy Motel, and consume a day and a half of time. At the Quincy call, once we got there, the arbitrator made the hearing on this case the last business of the day. Parties presented basically the same arguments as in Springfield. Again, no record was taken. And again, the arbitrator stated that she had the authority to allow the contested evidence, but that she still didn't know whether she would. Next, the parties were notified that the arbitrator would make a ruling at her call in Springfield. Parties attended the Springfield hearing, and the arbitrator allowed last arguments, and she announced that the evidence would not be allowed in the living minor claim. Then the arbitrator denied both claims. As you noted, we filed a motion contesting the arbitrator's decision, and both the cases and the motion were set for oral arguments at the commission on the same day. Arguments on the motion were made, and the commission determined that it would hear the cases after a ruling was made on the admissibility of the evidence. Next, the commission reversed the arbitrator's decision to exclude the evidence. A couple months later, it heard arguments on the consolidated cases. Just one week later, pretty fast, the commission issued its decision affirming and adopting the decision of the arbitrator without modification. After all that, the commission knew or should have known what it was doing, both with its ruling on the evidence and its ruling on the cases. It would be wrong for the court to know that the arbitrator spent that much time and effort on the question of the Istanbuli evidence and conclude that they just forgot what evidence they were supposed to consider. Even if the commission did just forget, it did just make a mistake. The Jacksons shouldn't be the ones to have to pay for that mistake, and so I'm asking that the commission be required to properly review the evidence, and it should do so strictly to weigh the evidence, not to try to justify its own earlier errors. It should be required to do its job, and I hope that background helps the court to understand this isn't something that sneaked up on the commission. This came up over and over. I've never in 35 years put this much effort in a single case, had this many hearings, and the commission certainly knew. Someone could say, well, they didn't know what the arbitrator did, but they knew what they did. Both cases and the motion were called at the same time. They all sat there and listened to us argue the motion, and they said, well, let's hold back the cases until we find out what the ruling is on the motion. They did. They ruled in our favor on the motion, and then six days later, they ruled against the claimant. So I think there is an error in here somewhere, but it's one of those where I can see the presumption argument and the speculation argument when you're looking at the internal narrative of the commission's decision, but that's not what we're doing. They had a duly issued decision declaring the evidence comes in. Then they had a duly issued decision saying they were accepting the arbitrator's decision, which by its plain language could not be in keeping with their first ruling that the evidence come in, and that's my point. When this is a little bit different, I've never seen it before. I don't think there's great precedent at stake here, because I don't think I'll ever see it again. There's a difference between a commission ruling that's issued regarding a specific issue and then the commission having a second ruling referring to a case that clearly contradicts that. There's a whole lot of difference in that between when we come up here and argue about speculation or, well, they didn't say everything or they left something out. And so I say clearly, clearly, this is an error. What the error is, if you try to say what the error is, that's the speculation. Try to say why it happened. So thank you for your patience in listening to the background on it, but I think the background tells the story. They knew or should have known. Any further argument, Mr. Rezor? Not at this time, Your Honor. Thank you very much. I'd just say that in this particular case, there's been, I'm asking that it be remanded and that the commission receive briefs and hear arguments on all the evidence in the first ruling, with the first ruling required to be in record, because there's been too much of a mess for the commission to just look at the cold record. It deserves briefs and arguments. The commission deserves it, but more importantly, the Jacksons deserve it. Thank you very much. Okay. Did you want to address the second case at all? The second case, Your Honor, follows the first. If the first case, the one we're talking about, James Jackson, goes back to the commission, the commission will have to make a ruling. If at the conclusion of that and any appeals which may follow, it's determined that the man did have occupational disease, well, then that sets the tone for Mrs. Jackson. If it's found out he did not, then she didn't have a case in the first place. So my recommendation would be that they specifically be separated when they go back and a ruling be made on James Jackson's case and Geraldine's case will follow. Very good. You'll have time to reply, Mr. Azor. Thank you. Mr. Muller, you may respond. Thank you. May it please the court, counsel. I'm Bob Muller. I'm representing Monterey Coal Company in these two cases. The claim that the commission did not consider the evidence they just let in as evidence less than two months before must fail. The timeframe makes no sense at all. They rule that the evidence should come in on 1-25-19. They have an oral argument on 3-7-19 and issue a decision on 3-15-19. It makes no sense that they forgot about that evidence, that they didn't consider it. It was right in front of them. It was argued to them eight days before they issued their decision. Well, notwithstanding the presumptive significance, sensible significance of this doctrine, the commission never mentioned it in their decision. Did they? Did they consider it? They don't have to, according to the case law that I cited. Right. I mean, you're right. They didn't. I'm sorry. I didn't answer the question really. But no, you're right. They didn't, but they don't have to. Well, I don't dispute that general presumption, but are you aware of any cases? Have you unearthed any cases with sort of a situation like this, where the commission expressly ruled the arbitrary error, excluding certain evidence, and then simply turned around and adopted the decision wholesale? Do you have any cases that are similar to this? I didn't find any cases that were- I didn't think you would. Pardon? I didn't think you would. Can I ask a question from a factual standpoint? Did the arbitrator disallow the record and the deposition testimony in both of the underlying cases? No, your honor. Only in one? The- all of the evidence was, of course, established on Mr. Jackson's case. He died, obviously, in the course of it, but all of his evidence was pretty much assembled, but then he died before the case got to trial, so then additional evidence happened, so that there were two separate exhibit lists, or whatever you want to call it, that were introduced into evidence. The exhibit list on the death claim was introduced in that case only, and both exhibit lists were introduced- excuse me, I switched that around, and I apologize. Both exhibit lists were introduced into the death claim, and only the one exhibit list in the minor's case. Well, my understanding, unless I'm wrong, is the arbitrator disallowed the- in the initial case that was filed, but allowed it into evidence in her death case. Correct. Is that true? Correct. Right. All right. Okay, and they- I should make the point at this time, given the question, in that decision that the commission issued in the death case, they went through the reasons they thought Dr. Istanbuli's evidence was really entitled to no- So, to me, that tells the story here for- Was- excuse me, Mr. Mueller, somehow on my computer, it went a little bit, noise came on it, and I missed that statement. They went through the evidence, and what was your last statement there? In the death case decision, the commission told, you know, the- why they didn't think Dr. Istanbuli's opinions were entitled to any weight. Weight. Okay, I- I'm sorry. There was a bell that went off, and I missed the last word. Okay. With regard to the- whether the commission considered that Dr. Istanbuli's evidence, his opinions, whatever, in the initial case, they do say in their decision that it included the evidentiary matters, and that's the only evidentiary matter there was. So, it seems to me they were saying they did consider that in reaching their decision. Obviously, the- I cited the two cases, and- Run that by me again. I had a little interference. They did say something in the- when they addressed the first case? In the commission decision, in affirming and adopting the arbitrator, they mentioned that this included the evidentiary issues, or whatever word they use, evidentiary matters, and that's the only evidentiary issue there was, was whether Dr. Istanbuli's evidence was going in in the first- in that case. So, they- So, the phrasing was evidentiary matters, right? I could look at- it may be evidentiary issues, Your Honor. Evidentiary- but- Yes, evidentiary issues. I assume in every review, they would consider evidentiary issues. Well, but there aren't evidentiary issues in every review, and I think the fact that they said that in this one means something. Okay. I'm assuming that, and I think that it's not really speculation. It's, hey, that means something when they say that, I think. But I'm not going to go into the case law, because I cited it. It's right there. I think it applies to this case, and I think it's directly on point. There may be subtle differences, as pointed out, but in essence, it's there that it's assumed that the Commission considered all the evidence when they issued a decision. They do not have to cite it specifically in that decision, and that's what happened here. I don't see any difference. So, I think the argument here fails, and it should be rejected with regard to the Commission not considering Dr. Istanbul's evidence, as I said before. The time frame just doesn't make sense that they didn't consider it. It was argued for before them by the two of us eight days before they issued the decision. It was right there in front of them. They had to consider it. They couldn't ignore it. They couldn't forget it. They did consider it, and I think going next, I think on the merits, there is sufficient evidence to support the Commission decision in this case based on the medical in here of a board-certified pulmonary specialist, four B readers who are board-certified radiologists, and the medical records from the Commission that there was no occupation of lung disease, no pneumoconiosis. The decision is not against the manifest way of the evidence and should be affirmed. With regard to the death case, the Commission did consider all of the evidence in their decision in that case. They went ahead and looked at everything. They did not just say, oh, because of our finding in the other case, this case is denied also. They looked at the evidence and made findings with regard to the cause of the minor's death. They specifically indicated that they were relying on the records from the Heartland Hospice, which had an admitting diagnosis and a terminal diagnosis of non-Hodgkin's lymphoma. They were relying on the death certificate from Dr. Akwara, which also said non-Hodgkin's lymphoma, and they were relying on Dr. Tudor's opinion that the death was due to non-Hodgkin's lymphoma. They said Dr. Tudor's opinion was more persuasive, informed, and strong than Dr. Istanbuli's. They found the death due to non-Hodgkin's lymphoma and that the employment did not play a part in that death. This decision is certainly not against the manifest weight of the evidence. As I said, they did consider all of the evidence. They did not just rely on the other decision. They made the decision as to the cause of the man's death. This should be affirmed. Thank you very much. Thank you, Mr. Mueller. Mr. Rezor, you may reply. Thank you. First, with regard to Justice Hoffman's question, the commission, as Mr. Mueller said, did talk about the evidence, Dr. Istanbuli's evidence, in the widow's case. The problem with that is if you look at the end of their decision on Mr. Jackson's living minor case, it said he didn't have any disease. All other issues are moot. In truth, the widow's claim was moot, too. If he has no disease, there is no claim to talk about. I don't know why they wrote that second one. I think that was an error. Another thing that came up in the last discussion was evidentiary issues. And the claimant agrees that in the decision opinion, the commission referred to evidentiary issues. But in the same and adopted the decision of the arbitrator, in which the arbitrator specifically excluded the report and deposition of Istanbuli. And my position is that the general is overcome by the specific. Also, that wording is just boilerplate that gets put in there. And to check that out, I went back and looked at six cases, chronologically going back in order, where Commissioner Simpson was involved in the decision. And in each of the cases, Jerry Field, Richard Harrell, Linda Daub, Michael Dunbar, Paul Jarvis, and Larry Wells, the same wording was used, evidentiary issues. But there were no evidentiary issues other than objections during the depositions themselves. So without flagging the dead horse anymore, I'll just repeat that it's clear that the commission made a ruling specifically saying that evidence comes in. After that, they accepted and affirmed and adopted an arbitrary decision, which clearly kept it out. And we need to take the commission at its word when it so boldly puts it forth, particularly in light of the purpose of this, which is to have a remedial statute to be liberally construed to provide benefits for injured workers, not to protect the commission, not for anything else. And given that guideline, I ask that the court remand to the commission and specifically include that it allow or require briefs and oral argument. So this matter, this very twisted matter can be straightened out for them and argued to its fullest and make a decision on James Jackson. That's my request. Thank you very much. Thank you, Mr. Resort, Mr. Muller, both for your arguments in this matter this afternoon. This matter will be taken under advisement or written disposition shall issue.